

**SO ORDERED.**

**SIGNED this 16th day of September, 2015.**

_____
LENA MANSORI JAMES
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| CHARLES FRANCIS PATERNO, JR. | ) | Case No. 14-80278 |
| and | ) | |
| JACQUELYN NYE PATERNO, | ) | |
| | ) | Chapter 11 |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| ArborOne, ACA, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 15-9008 |
| v. | ) | |
| | ) | |
| Charles Francis Paterno, Jr. and | ) | |
| Carolina AAC Development, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER AND OPINION GRANTING MOTION TO DISMISS**
**COUNTS III AND IV OF THE COMPLAINT**

THIS MATTER coming on before the Court for hearing on August 11, 2015, after due and proper notice, upon Motion by Charles Paterno and Carolina AAC Development, LLC (together, the "Defendants") to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  Appearing before the Court was Christine L. Myatt, counsel for ArborOne, ACA ("ArborOne"), and Michelle M. Walker, counsel for the Defendants.  The Court has

considered the motion to dismiss, the response thereto, the supporting memoranda of law, and the arguments of counsel at the hearing. For the reasons that follow, the Court will grant the motion to dismiss for two counts of the Complaint filed February 16, 2015 (the "Complaint") and will defer ruling on the remaining counts of the Complaint pending the hearing on the Motion for Allowance of Cost of Administration Claim filed in the main case on February 18, 2015.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion is a defense to a claim for relief and provides for dismissal where a party has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The facts alleged must be sufficient "to raise a right to relief above the speculative level" and state a claim "that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). When considering a motion to dismiss, the court must take all well-pleaded factual allegations as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiffs may proceed into the litigation process only when their complaints are "justified by both law and fact." Francis v. Giacomelli, 588 F.3d 186, 192-93 (4th Cir. 2009).

## BACKGROUND

Prepetition, ArborOne was the lender to Carolina AAC, LLC ("CAAC") and Carolina AAC Development, LLC ("CAACD") in connection with the construction of a manufacturing plant in Bennettsville, South Carolina to produce autoclaved aerated concrete. Charles and Jacquelyn Paterno (the "Debtors") were guarantors of the indebtedness. Charles Paterno, the male Debtor, is the sole manager of CAACD. The construction on the manufacturing plant ceased after the general contractor's death, and ArborOne declared its bonds due and payable pursuant to its loan documents. ArborOne commenced legal proceedings in July 2012 against

the Debtors, CAAC, and CAACD in Orange County, North Carolina. ArborOne also commenced a foreclosure action against CAACD's assets in Marion County, South Carolina (the "Foreclosure Action").  Judgments were entered in the Orange County, North Carolina legal proceedings in favor of ArborOne on January 23, 2014.

Atkinson Construction Company ("Atkinson"), the company under contract to build the manufacturing facility for CAACD in South Carolina, filed for bankruptcy protection in March 2013 in the United States Bankruptcy Court in South Carolina.  In May 2013, prior to the Foreclosure Action by ArborOne, CAACD commenced an adversary proceeding in Atkinson's bankruptcy case against Atkinson and North American Specialty Insurance Company ("NASIC"), the surety for the performance bond insuring Atkinson's fulfillment of the construction contract, to recover remaining amounts to be paid under the performance bond ("Surety Litigation").

The Debtors filed their Chapter 11 bankruptcy petition on March 14, 2014 (the "Petition Date"), while the Surety Litigation remained ongoing.  As of the Petition Date, the Debtors owed $11,124,072.98 to ArborOne exclusive of costs and attorneys' fees. During the pendency of the Debtors' Chapter 11 case, ArborOne's Foreclosure Action in Marion County, South Carolina against CAACD was completed, culminating in a foreclosure sale of the property securing the indebtedness.  ArborOne was the purchaser of the assets at this sale in September 2014.  The Surety Litigation involving CAACD, Atkinson, and NASIC was then resolved in October 2014 with funds being distributed to CAACD (the "Settlement Proceeds"). ArborOne did not receive any of the Settlement Proceeds.

Two days prior to the Debtors' confirmation hearing, ArborOne instituted this adversary proceeding seeking to recover a portion of the Settlement Proceeds that were ultimately

distributed to Charles Paterno. The Complaint against Charles Paterno and CAACD contains four counts: Conversion, Unfair and Deceptive Trade Practices, Nondischargeability of Debt pursuant to 11 U.S.C. § 523(a)(2)(A), and (as to Charles Paterno only) Nondischargeability of Debt pursuant to 11 U.S.C. § 523(a)(6).

In the Complaint, ArborOne alleges that as a result of the Foreclosure Action and subsequent sale, assets were transferred from CAACD to ArborOne; these assets included CAACD's contract rights related to the Atkinson construction contract and any proceeds from the Surety Litigation. Therefore, as of September 25, 2014, CAACD had no right, title, or interest in the Settlement Proceeds. ArborOne specifically alleges that Charles Paterno and CAACD had knowledge of ArborOne's prior security interest and subsequent ownership in all contract rights and proceeds related to the Atkinson construction contract and represented, either explicitly or implicitly, to NASIC that CAACD was entitled to the Settlement Proceeds. As a result, the conduct of Charles Paterno and CAACD misled NASIC and caused NASIC to distribute the Settlement Proceeds to the exclusion and detriment of ArborOne. Charles Paterno, as sole manager of CAACD, then caused the transfer of some of these Settlement Proceeds to himself, thereby converting property belonging to ArborOne. In the Debtors' Monthly Operating Report for the period of September 30 to October 30, 2014, filed on November 21, 2014, the Debtors disclosed receipt of $16,331.50 as an "Expense Reimbursement from Carolina AAC." Based on these allegations, ArborOne contends that the Defendants obtained money under false pretenses and false representations under § 523(a)(2)(A) and that Charles Paterno's conduct constituted a willful and malicious attempt to injure ArborOne under § 523(a)(6). As a result, ArborOne prays that any judgment stemming from these allegations be declared nondischargeable.

The Confirmation Hearing on the Debtors' Second Amended Plan was held on February 18, 2015, almost three months after the Debtors disclosed receipt of funds from Carolina AAC in a monthly operating report. Prior to the hearing, ArborOne filed a Motion for Allowance of Administration Claim in the amount of $16,331.50 in which it asserts a claim under § 503(b)(1) based on the same set of allegations set forth in the Complaint. Even though ArborOne had filed the Complaint and counsel for ArborOne appeared at the hearing, ArborOne did not object to confirmation. The Second Amended Plan was confirmed as amended in open court, and the Order Confirming Second Amended Plan of Reorganization was entered on March 5, 2015.

## **DISCUSSION**

ArborOne requests in Counts III and IV of the Complaint that the alleged claims related to the transfer of the Settlement Proceeds be determined to be nondischargeable under 11 U.S.C. § 523(a)(2)(A) and § 523(a)(6). The Defendants have moved to dismiss these claims on the grounds that they are untimely. Under § 523(c), debts of the nature as set forth in paragraphs (2), (4), and (6) of § 523(a) are automatically discharged unless a creditor brings an action to determine the dischargeability of the debt. The failure to do so will result in the discharge of the debt. While § 523(c) provides no time limit within which a creditor must initiate an action, Federal Rule of Bankruptcy Procedure 4007(c) limits the time for bringing a dischargeability complaint under § 523(c) to 60 days following the first date set for the meeting of creditors under 11 U.S.C. § 341(a). In this case, the last day for objecting to nondischargeability of debt was June 13, 2014. Because the Complaint was filed on February 16, 2015, the Complaint was untimely under Rule 4007(c) as to the two counts alleging nondischargeability under § 523(a).

The sequence of events in this case highlights the gap in time in a Chapter 11 case between the Rule 4007(c) deadline to object to the dischargeability of a claim of the type set

forth in § 523(a) (2), (4) and (6) and the confirmation of a Chapter 11 plan providing for a discharge. Under 11 U.S.C. § 1141(d)(1) the confirmed plan, as a general rule, discharges the Chapter 11 debtor from any debt arising not just pre-petition but pre-confirmation.[1] The conduct giving rise to the claims asserted by ArborOne occurred in October 2014: after the Rule 4007(c) deadline to object to dischargeability but prior to confirmation of the Debtors' Chapter 11 plan. Therefore, these claims would generally be subject to the Debtors' discharge. Despite the Rule 4007(c) deadline, the Bankruptcy Code provides a remedy for creditors without knowledge of a bankruptcy case who hold a claim of a kind specified in paragraphs (2), (4) or (6) of 11 U.S.C. § 523(a). See 11 U.S.C. § 523(a)(3)(B). Such creditors may bring a dischargeability action under § 523(a)(3)(B) at any time. See Fed. R. Bankr. P. 4007(b). Here, ArborOne argues that while the deadline to file a § 523(a)(2) or (6) claim had passed when it filed the Complaint, the court has the discretion to apply equitable principles, such as waiver, estoppel, and equitable tolling, to determine the timeliness.[2]

In the Fourth Circuit, the possibility of equitable tolling of the deadline specified in Rule 4007(c) originates from Farouki v. Emirates Bank Int'l, Ltd., 14 F.3d 244 (4th Cir. 1994). In Farouki, the Court of Appeals stated that "Rule 4004(a) does not preclude the bankruptcy court from exercising its equitable powers in extraordinary cases." Id. at 248. Bankruptcy courts in

---

[1] § 1141(d)(1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan –
    (A) Discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not –
        (i)    A proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
        (ii)   Such claim is allowed under section 502 of this title; or
        (iii)  The holder of such claim has accepted the plan…

[2] ArborOne also contends that Article 6.1 of the Debtors' plan, which contains general language providing for the waiver and release of the right to pursue litigation and causes of action against the Debtors with the exception of pending actions reserved its right to proceed with the claims in the Complaint. The Court agrees that the Plan language reserves ArborOne's right to proceed with its pending claims, but finds that it does not preclude the Debtors from asserting defenses to such claims.

the Fourth Circuit have extended this analysis in Farouki to apply to Rule 4007(c) as well. See Creech v. Ormond Oil & Gas Co., Inc. (In re Creech), 513 B.R. 482, 488 (Bankr. E.D.N.C. 2014); Groves v. Duke (In re Duke), No. 11-51521, Adv. No. 12-06019, 2012 WL 4506662, at *3 (Bankr. M.D.N.C. Sept. 28, 2012); In re McConkey, No. 08-25164-JS, 2011 WL 1436431, at *6 (Bankr. D. Md. April 14, 2011). The party asserting equitable tolling bears the burden of proof, and equitable tolling should be applied sparingly. In re McConkey, 2011 WL 1436431, at *5.

ArborOne specifically relies on Creech and Duke in support of its argument that the Court should find the Rule 4007(c) dischargeability deadline to have equitably tolled. Pls.' Br. in Opp'n to Defs.' Mot. Dismiss 2 (citing In re Creech, 513 B.R. 482, and In re Duke, 2012 WL 4506662). In both of these cases from bankruptcy courts in North Carolina, the courts acknowledged the possibility of equitable tolling but ultimately declined to apply the doctrine in the particular circumstances of each case.[3] These cases offer ArborOne little support other than to generally recognize that the doctrine of equitable tolling may be applied to the Rule 4007(c) deadline. Similarly, in Soliz v. Clifton (In re Clifton), No. 09-02379-8-RDD, Adv. No. 10-0002-8-RDD, 2010 WL 2541121 (Bankr. E.D.N.C. June 18, 2010), the bankruptcy court recognized equitable tolling but declined to toll the dischargeability deadline, stating that the doctrine "only applies in rare or exceptional circumstances and often in situations where the plaintiff may have been mislead [sic] or prevented by a defendant to assert its rights." Id. at *4 (citing Don L. Owen, Inc. v. Miller (In re Miller), No. 04-80905-hdh-7, 2006 WL 6507922 (N.D. Tex. March

---

[3] In the Creech opinion cited by ArborOne, the bankruptcy court declined to grant the motion to dismiss the nondischargeability count, reserving the possibility of equitable tolling. In a subsequent opinion in the same case, however, the court declined to apply the doctrine and dismissed the nondischargeability counterclaim. See Creech v. Ormond Oil & Gas Co., Inc. (In re Creech), No. 13-00817-8-SWH, Adv. No. 13-00124-8-SWH, 2015 WL 3451741 (Bankr. E.D.N.C. May 28, 2015).

28, 2006)); see also In re McConkey, 2011 WL 1436431 (finding equitable tolling inapplicable as there were no extraordinary circumstances external to the plaintiff's own conduct).

ArborOne has not cited, and this court has not located, any decision in which a court has equitably tolled the Rule 4007(c) deadline for a creditor in a Chapter 11 proceeding where that creditor was listed on the original schedules and participated throughout the case and the Chapter 11 plan was confirmed, as is the case here. A few courts in the Fourth Circuit have allowed the deadline under Rule 4007(c) to be equitably tolled, but under very different circumstances. See Wilkerson Fuel, Inc. v. Elliott, 415 B.R. 214 (D.S.C. 2009); In re Ghanei, No. 03-14557-SSM, Adv. No. 04-1211, 2004 WL 3464153 (Bankr. E.D.Va. Oct. 25, 2004).

In Wilkerson, the court allowed the deadline for a nondischargeability complaint in a Chapter 13 case to be tolled where during the Rule 4007(c) 60-day period the creditor had filed a motion for relief from stay describing his debt as nondischargeable. Wilkerson Fuel, 415 B.R. 214. The court reasoned that the motion for relief from stay was sufficient to put the debtor on notice and that the creditor had actively pursued its judicial remedies during the statutory period. Id. at 222. This decision reversed the bankruptcy court, which had held that the facts of the case did not present extraordinary circumstances warranting equitable relief under applicable law. Id. at 221.

In Ghanei, a Chapter 7 trustee filed a preference action against the debtor's former wife to avoid payments made to her prepetition. In re Ghanei, 2004 WL 3464153. The former spouse, who was not listed as a creditor, then filed a third-party complaint against the debtor, alleging nondischargeability of debts under both § 523(a)(5) and § 523(a)(15).[4] The court denied the motion to dismiss the nondischargeability count of the third-party complaint against the debtor

---

[4] The Bankruptcy Reform Act of 1994 added paragraph (15) to § 523(c)(1). The reference to paragraph (15) was deleted from § 523(c)(1) in 2005, for cases commencing on or after October 17, 2005.

8

under § 523(a)(15), but stated that its ruling on equitable tolling only applied to claims which the former spouse could not reasonably believe she held on the filing date because the claims had already been paid or satisfied.  Id. at *7.  The court in Ghanei noted that federal courts have typically extended equitable relief only "sparingly" and where the party has exercised diligence in preserving its legal rights.  Id. at *6 (citing Irwin v. Veterans Admin., 498 U.S. 89, 96 (1990)).  The court found that while equitable tolling is generally applied where misconduct or trickery induced a party to miss a deadline, it could be applied "in other cases." Id. (citing Young v. United States, 535 U.S. 43, 50 (2002)).  The court concluded that the specific facts before it presented one such "other case" and found it appropriate to apply equitable tolling, as there was no debt in existence on the deadline to file a nondischargeability action and the former spouse filed her third-party complaint expeditiously after being served with the trustee's avoidance complaint.

The circumstances in the present case are similar to those in Ghanei in that ArborOne was not induced through trickery or misconduct to miss the deadline—rather, the alleged claim simply did not arise until after the Rule 4007 deadline.  But unlike in Ghanei, ArborOne had multiple legal avenues available to it other than asserting late-filed § 523(a)(2)(A) and (a)(6) claims. In this case there is the question, not so much of ArborOne's diligence in pursuing its legal rights, but of the options ArborOne has chosen to pursue at the expense of other possible options that could have been pursued in a timely manner.

ArborOne has been an active participant in this bankruptcy case from its beginning and was listed as holding the largest claim in the case. Further, as counsel for ArborOne stated at the August 11, 2015 hearing, it has been aware of the Surety Litigation since the Debtors' § 341 meeting in April 2014.  According to the allegations in the Complaint, as of September 25, 2014,

9

ArborOne asserted an ownership interest in any proceeds from the Surety Litigation. The Surety Litigation was settled, as evidenced by a consent order entered by the South Carolina bankruptcy court, on October 20, 2014 (attached to the Complaint as Exhibit F). Shortly thereafter, Charles Paterno allegedly engaged in conduct constituting conversion of property, unfair and deceptive trade practices, obtaining money and property by false representations, and willful and malicious injury. All of this alleged conduct occurred during the pendency of the debtor-in-possession Chapter 11 proceeding and prior to confirmation of a plan.

Faced with this set of circumstances, ArborOne filed this complaint under § 523(a)(2)(A) and § 523(a)(6) and also filed its administrative expense claim in an effort to preserve its legal rights to the $16,331.50. At the hearing on the motion to dismiss, counsel for Arbor One indicated that ArborOne would be satisfied with treatment of its claim either as a nondischargeable debt or as an administrative expense in the bankruptcy case. The Court notes that ArborOne chose not to pursue other possible legal avenues. The allegations in the Complaint necessary to support counts of nondischargeability of debt under § 523(a)(2)(A)[5] and § 523(a)(6)[6] require proof that the acts were done with wrongful intent. Upon discovery of Charles Paterno's conduct of October 2014, ArborOne had several options, including objecting to discharge,[7] objecting to confirmation, moving to convert or dismiss the case, and moving to appoint a trustee.[8] In addition, following confirmation, ArborOne had 180 days to file a motion

---

[5]  In order to establish the nondischargeability of a debt under § 523(a)(2)(A), one of the elements a creditor must prove is that at the time the representation was made, the debtor knew the representation was false. Winston-Salem City Emps.' Fed. Credit Union v. Casper (In re Casper), 466 B.R. 786, 793 (Bankr. M.D.N.C. 2012).

[6]  An injurious act, done deliberately and intentionally, in knowing disregard of the rights of another, is sufficiently willful and malicious for the purposes of § 523(a)(6); conversion may be such an injurious act. CM P'ship v. Groover (In re Groover), No. 03-51013, Adv. No. 03-6103W, 2004 WL 212948, at *7 (Bankr. M.D.N.C. January 16, 2004) (citing In re Stanley, 66 F.3d 664, 667 (4th Cir. 1995)).

[7]  Pursuant to Fed.R.Bank.P. 4004(a), in a Chapter 11 case, the complaint objecting to discharge shall be filed no later than the first date set for the hearing on confirmation.

[8]  11 U.S.C. § 1104 provides:

to revoke the order of confirmation if it believed it had grounds to allege that the confirmation order was procured by fraud.[9] The nature of Charles Paterno's alleged conduct—which was discovered by ArborOne prior to plan confirmation—raises the question as to the reasoning behind ArborOne's failure to avail itself of other possible avenues to preserve its legal rights.[10] It is the belief of the Court that it is not appropriate in these circumstances to use its equitable powers to allow the nondischargeability counts of the Complaint to go forward.

However, ArborOne has also filed a motion for allowance of cost of administration claim. The parties do not dispute that any administrative claim, to the extent it is allowed, is reserved in the confirmation order of the Second Amended Plan. The Debtors have not filed an objection to ArborOne's motion. The Court will set this motion for hearing and defer ruling on the other two counts of the Complaint until after a hearing on the administrative claim of ArborOne.

Based upon the foregoing, it is hereby ORDERED that Counts III and IV of the Complaint are dismissed.

---

    (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
        (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
        (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

[9] 11 U.S.C. § 1144 provides that "[o]n request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud." § 1144; see also Tenn-Fla Partners v. First Union Nat'l Bank of Florida, 229 B.R. 720 (W.D. Tenn. 1999).

[10] See Bank of Louisiana v. Pavlovich (Matter of Pavlovich), 952 F.2d 114 (5th Cir. 1992) (finding creditor bound by plan with respect to dischargeability issues that could have been raised prior to the date of confirmation and noting that creditor asserting time-barred § 523 claims based on events prior to Chapter 11 confirmation could have prevented confirmation if it had chosen to make full use of the "incriminating data" alleged).

**END OF DOCUMENT**

ARBORONE, ACA
VS
CHARLES FRANCIS PATERNO, Jr. and
CAROLINA AAC DEVELOPMENT, LLC

ADV. PRO. NO. 15-9008

Charles Francis Paterno, Jr.
Jacquelyn Nye Paterno
405 Meadowmont Lane
Chapel Hill, NC 27517

Michelle Walker
Law Office of James C. White
P.O. Box 16103
Chapel Hill, NC 27516

Christine L. Myatt
Suite 100
701 Green Valley Rd.
P.O. Box 3463
Greensboro, NC 27408

William P. Miller
Bankruptcy Administrator
P.O. Box 1828
Greensboro, NC 27402